```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
```
|  |  |  |
|---|---|---|
| DANIEL STARR, | : |  |
| Plaintiff, | : | OPINION & ORDER |
| -v.- | : | 20 Civ. 4484 (GWG) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |  |
|  | : |  |
| Defendant. |  |  |

```
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Daniel Starr brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for Disability Insurance Benefits under the Social Security Act ("the Act"). Both parties have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1] For the reasons set forth below, Starr's motion is granted, and the Commissioner's cross-motion is denied.

I. BACKGROUND

　A. Procedural History

On June 1, 2017, Starr filed an application for disability insurance benefits, alleging disability beginning on June 2, 2016. SSA Administrative Record, filed January 15, 2021

---

[1] Plaintiff's Motion to Remand, filed Apr. 14, 2021 (Docket # 20); Plaintiff's Memorandum of Law in Support, filed Apr. 14, 2021 (Docket # 21) ("Pl. Mem."); Defendant's Cross-Motion for Judgment on the Pleadings, filed Aug. 16, 2021 (Docket # 28); Defendant's Memorandum of Law in Support, filed Aug. 16, 2021 (Docket # 29) ("Def. Mem."); Plaintiff's Reply Memorandum of Law in Opposition to Defendant's Cross-Motion for Judgment on the Pleadings and in Further Support of Plaintiff's Motion to Remand, filed Sept. 6, 2021 (Docket # 33) ("Pl. Reply").

(Docket # 16), at 18 ("R."). Starr's application was denied on September 8, 2017, see R. 18, 93-103, after which Starr requested a hearing before an administrative law judge ("ALJ"), see R. 105. A video hearing was held on March 5, 2019. See R. 18, 51-81. In a written decision dated April 11, 2019, the ALJ found that Starr was not disabled and denied Starr's claim. See R. 18-27. Starr requested a review by the Appeals Council, which was denied on April 14, 2020. See R. 1-4. On June 11, 2020, Starr filed this action seeking review of the ALJ's decision. See Complaint, filed June 11, 2020 (Docket # 1).

### B. The Hearing Before the ALJ

The hearing was held in White Plains, New York. See R. 53. Starr and his counsel appeared remotely from Goshen, New York. See R. 18, 53. Vocational Expert ("VE") Sugi Y. Komarov also testified at the hearing. See R. 18, 76-80.

Starr testified that he was forty-seven years old at the time of the hearing, was not working, and had not worked since June 2016 due to back, hip, leg, and foot pain. See R. 57, 60, 65-67. He had a worker's compensation claim that settled in July 2018. See R. 58-59. Starr lives in a two-story house in Walden, New York with his girlfriend, as well as her son and grandson. See R. 55. Starr attended school through the ninth grade but was in special education and never read past a fourth-grade level. See R. 60. Before June 2016, Starr had worked as a construction laborer, flagger, and heavy equipment operator for a cable company. See R. 60, 74-76.

In June 2016, Starr sought treatment for lower back pain after he fell at work. See R. 62. Starr received injections to treat his back pain but could not undergo surgery because of his diabetes, see R. 64, which Starr treats by restricting his sugar intake, regularly checking his blood sugar, and taking insulin, see R. 64-65. Starr took opioids "for a long time" prior to and

after the injury, eventually developing an opioid dependency, which he began treating with suboxone in 2018. See R. 65.

Starr also received non-surgical treatment in June 2016 for a puncture wound on his right foot which developed into a diabetic ulcer. See R. 62-63; see also R. 256, 280. Starr wore a Controlled Ankle Movement boot intermittently but eventually underwent surgery in January 2017. See R. 61-63, 69-70. Although his foot healed following the surgery, Starr reinjured it in September 2018 when he walked a substantial distance after his car broke down, which caused a blister on his right foot that developed into another ulcer. See R. 61; see also R. 892.[2] Starr testified that at the time of the hearing he was taking antibiotics through a peripherally inserted central catheter ("PICC") line to treat a bone infection that subsequently arose in his foot, and that the antibiotic infusions take three to four hours each morning. See R. 62, 65-66. Starr testified that his foot and leg may require amputation. See R. 62. Starr also testified that he was advised to keep his leg elevated "over top of [his] chest." Id.

Starr takes gabapentin for his pain, which according to Starr, has not been eliminated. See R. 71-72. Starr testified that the pain prevents him from walking too far or sitting for too long. See R. 62, 67-68, 70-71, 74. When he does walk, Starr always uses a cane. See R. 70. Starr also takes Lyrica to improve the blood circulation in his foot. See R. 71-72.

Following Starr's testimony, the ALJ questioned the VE. See R. 76. Specifically, the ALJ inquired about the employability of an individual with Starr's vocational profile who was limited to sedentary work in that he could only occasionally use stairs, balance, stoop, kneel, crouch, and crawl, could not use ladders, and required a cane when ambulating. R. 77. The VE testified that such a person could not perform Starr's past relevant work but could perform the

---

[2] Starr underwent a second surgery in February 2019. See R. 61-62, 67, 997.

occupations of food and beverage order clerk, semiconductor bonder, and surveillance system monitor. See id. All of these jobs could be performed by someone who needed to elevate his foot on a one-foot high footstool. See R. 77-78. Only the job of surveillance system monitor would be precluded if the person were unable to walk or stand at all. See R. 78-79. The individual would be unemployable, however, if he needed to elevate his foot at least waist high, or if he were absent more than four days per month. See R. 78.

    C. The Medical Evidence

Both Starr and the Commissioner have provided detailed summaries of the medical evidence. See Pl. Mem. at 6-14; Def. Mem. at 4-15. The Court had directed the parties to specify any objections they had to the opposing party's summary of the record, see Scheduling Order, filed Jan. 19, 2021 (Docket # 17) ¶ 5, and neither party has done so. Accordingly, we adopt the parties' summaries of the medical evidence as accurate and complete for purpose of the issues raised in this suit. We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

    D. The ALJ's Decision

The ALJ denied Starr's application on April 11, 2019. See R. 27. In doing so, the ALJ concluded Starr has not been under a disability within the meaning of the Social Security Act from June 2, 2016, through April 11, 2019, the date of the decision. Id.

Following the five-step test set forth in the Social Security Administration ("SSA") regulations, the ALJ found that Starr met the insured status requirements through December 31, 2021, and "has not engaged in substantial gainful activity since June 2, 2016, the alleged onset date." R. 20. At step two, the ALJ found Starr "has the following severe impairments: obesity; peripheral artery disease; diabetes mellitus; diabetic foot ulcers; diabetic neuropathy; distant

history of right ankle fracture with open reduction internal fixation and degenerative joint disease by x-ray; and degenerative disc disease of the lumbar spine." Id.

At step three, the ALJ found Starr "d[id] not have an impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1" during the relevant period. R. 21. The ALJ specifically considered listings 1.02 ("Major dysfunction of a joint(s) (due to any cause)") and 1.04 ("Disorders of the spine"). R. 22; see also 20 C.F.R., Part 404, Subpart P, Appendix 1.

Before moving to step four, the ALJ assessed Starr's residual functional capacity ("RFC") for the relevant period. R. 22. The ALJ determined that Starr's testimony "concerning the intensity, persistence[,] and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." R. 23. The ALJ concluded that Starr had the RFC to perform "a range of sedentary exertion in that he is able to lift/carry five pounds frequently and 10 pounds occasionally; walk/stand up to two hours a day and sit up to six hours a day. He can occasionally climb stairs, balance, stoop, kneel, crouch[,] and crawl. He can never climb ladders, ropes, or scaffolds. He requires the use of a cane when ambulating and must elevate his foot as needed." R. 25. Although the RFC "made some allowance for right leg elevation," the ALJ concluded that "extreme elevation" was not required. Id. Specifically, the ALJ determined that Starr "must be able to elevate his foot with the use of a footstool as needed." R. 22. Moreover, the ALJ emphasized that "there is no evidence" that Starr's PICC infusion treatment, which "takes most of the day," "will last for a continuous period of 12 month[s] or more." Id. As to Starr's obesity, the ALJ considered Starr's weight but ultimately concluded that "the record does not document any significant problems secondary to obesity that would reduce" Starr's RFC further. R. 23-24. The ALJ's decision evaluated the opinions and

medical records of Dr. Kantha Kumar, Dr. Lawrence Schulman, Dr. Edgard Quinones, Starr's treating podiatrist Dr. Shane Baker, the state agency medical consultant, as well as the various opinions rendered in connection with Starr's worker's compensation claim.  See R. 22-25.

At step four, the ALJ concluded that Starr was "unable to perform any past relevant work," during the relevant time period.  R. 26.  Finally, at step five, considering Starr's "age, education, work experience, and residual functional capacity" for sedentary work, the ALJ found "there [were] jobs that existed in significant numbers in the national economy that [Starr] c[ould have] perform[ed]."  R. 26.  Accordingly, the ALJ determined that "[a] finding of 'not disabled' [was] appropriate."  R. 27.

## II. GOVERNING STANDARDS OF LAW

### A. Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (punctuation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (punctuation omitted).  Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence

supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (punctuation omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Rather, substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (punctuation omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (punctuation omitted). "[T]he threshold for such evidentiary sufficiency is not high." Id. The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (punctuation omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (punctuation omitted).

B.  Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (citations omitted) (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his or her age, education, or work experience. See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, if the claimant's

impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III. DISCUSSION

Starr raises essentially two arguments in his challenge to the ALJ's decision. First, Starr maintains that the ALJ failed to fulfill her duty to develop the medical evidence. See Pl. Mem. at 20. Second, Starr contends that the ALJ's RFC was not based on substantial evidence and that he was not able to perform sedentary work. See id. at 16, 21.

A. Duty to Develop the Record

When an ALJ assesses a claimant's alleged disability, an ALJ must develop the claimant's medical history for at least a 12-month period. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. §§ 404.1512(d), 416.912(d) (2017); see Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings . . . .") (citing cases); accord Sims v. Apfel, 530 U.S. 103, 111 (2000) (ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits").

The governing statute provides that the ALJ "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make" the disability determination. 42 U.S.C. § 423(d)(5)(B); accord 20 C.F.R. §§ 404.1512(d), 416.912(d) (2017). The regulations define this as, at a minimum, "the records of [a claimant's] medical source(s) covering at least the 12 months preceding the month in which" a claim is filed. 20 C.F.R. §§ 404.1512(d)(2), 416.912(d)(2) (2017). "Every reasonable effort" means that the Social Security Administration must:

> make an initial request for evidence from [a claimant's] medical source and, at any time between 10 and 20 calendar days after the initial request . . . make one follow-up request to obtain the medical evidence necessary to make a determination. The medical source will have a minimum of 10 calendar days from the date of [the SSA's] follow-up request to reply, unless [the SSA's] experience with that source indicates that a longer period is advisable in a particular case.

Id. §§ 404.1512(d)(1), 416.912(d)(1) (2017); accord Assenheimer v. Comm'r of Soc. Sec., 2015 WL 5707164, at *15 (S.D.N.Y. Sept. 29, 2015). The ALJ's duty to develop the record remains regardless of whether the claimant is represented by counsel. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999); accord Cancel v. Colvin, 2015 WL 865479, at *5 (S.D.N.Y. Mar. 2, 2015) (citing cases).

Furthermore, this duty "encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." Pena v. Astrue, 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008). Where the ALJ fails to develop the record, remand is appropriate. Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999). At the same time, it is well established that "where there are no obvious gaps in the

administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Id. at 79 n.5 (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)); accord Perez, 77 F.3d at 48 (where the ALJ had "already . . . obtained and considered reports" from treating physicians, "[t]he ALJ had before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability").

Here, Starr does not point to any medical records that the ALJ failed to procure. Nor does Starr point to anything in the hearing transcript that suggests the ALJ did not follow up on either Starr's or the VE's testimony. Instead, Starr essentially argues that because the ALJ found the opinions of certain doctors to be unsupported, "the ALJ had an affirmative obligation to recontact" those doctors, seek their responses to post-hearing interrogatories, or call a medical expert to testify at the hearing. Pl. Mem. at 20-21. Put another way, Starr argues that the ALJ was required to ask those treating doctors "any questions she may have." Id.

We reject this argument inasmuch as there is nothing to indicate that incompleteness of the record prevented the ALJ from assessing Starr's limitations. Importantly, "[t]he mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician." Micheli v. Astrue, 501 F. App'x 26, 29 (2d Cir. 2012) (summary order). Instead, "[t]he duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings." Morris v. Berryhill, 721 F. App'x 25, 28 (2d Cir. 2018) (summary order). Starr's argument essentially boils down to the proposition that because the ALJ found that the record did not support the limitations that certain doctors opined existed, the ALJ was bound to determine if there existed records that would support those

limitations. We reject that notion because it assumes that the absence of proof in the record to support a medical opinion necessarily means that such proof must exist elsewhere.

Finally, the ALJ did not err in declining to call a medical expert at the hearing. Obtaining testimony from a medical expert is discretionary, see Soltis v. Berryhill, 2019 WL 1324415, at *21 (S.D.N.Y. Mar. 25, 2019) (citing cases), as Starr recognizes, see Pl. Mem. at 21 ("if the ALJ had remaining questions . . . she has the option of calling upon a medical expert" (emphasis added)). The ALJ was capable of adjudicating Starr's claim based on the existing record and thus she did not breach her duty to develop the record by declining to obtain testimony from a medical expert. See Griggs v. Comm'r of Soc. Sec., 2019 WL 2453354, at *18 (S.D.N.Y. Feb. 12, 2019) ("there were no gaps in the record, and thus, the ALJ acted within his discretion not to request a medical expert").

Accordingly, we conclude that the ALJ fulfilled her duty to develop the record.

B. RFC/Ability to Perform Sedentary Work

Starr argues that (1) his walking and standing abilities were too restricted by his foot injury to allow him to do sedentary work; and (2) the record does not support the ALJ's determination that only limited elevation of Starr's right foot was required to perform sedentary work. See Pl. Mem. at 16-19, 21-26.

A claimant's RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8P, 1996 WL 374184, at *3 (S.S.A. July 2, 1996). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of

the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id. at *1; accord Ferraris v. Heckler, 728 F.2d 582, 585 (2d Cir. 1984) ("[I]n making any determination as to a claimant's disability, the Secretary must explain what physical functions the claimant is capable of performing.") (citations omitted).

We begin by noting that the ALJ could properly discount opinions prepared for worker's compensation purposes that were "vague" or included neither discussion of Starr's "specific limitations" nor a non-conclusory explanation of why Starr was disabled. See R. 24, 505-08. Case law holds that "conclusory opinions" applying worker's compensation guidelines to conclude that a claimant is disabled "are entitled to no particular weight." Distefano v. Berryhill, 363 F. Supp. 3d 453, 473 (S.D.N.Y. 2019) (punctuation omitted).

Starr's opening brief argued that it was error for the ALJ to give "great weight" to the state agency consultant, see Pl. Mem. at 20, who opined in July 2017 that Starr was "limited . . . to sedentary exertion." R. 24. But the case on which Starr's contention depends, see Pl. Mem. at 20 (citing Lewis v. Colvin, 122 F. Supp. 3d 1 (N.D.N.Y. 2015)), relied on the application of the so-called "treating physician rule," which does not apply to this case. That rule applies only to "claims filed . . . before March 27, 2017." 20 C.F.R. § 416.927. "For claims filed on or after March 27, 2017, the rules in § 416.920c apply." Id.; accord Dorta v. Saul, 2020 WL 6269833, at *3 n.8 (S.D.N.Y. Oct. 26, 2020)). That regulation provides that an ALJ must not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a).

In any case, the ALJ did not give "great weight" to the consultant; she merely found his opinion "generally persuasive" because it was "supported by clinical findings of swelling of the

right foot, ankle and leg, decreased range of motion of the right ankle, balance problems and decreased sensation in the right foot, but no instability and a well-healed ulcer." R. 24.  Starr's reply brief asserts that the consultant's opinion was stale because it was 1.5 years old and prior to Starr developing the second ulcer.  See Pl. Reply at 7.  But there is no evidence to suggest that Starr's cellulitis and PICC treatment were anything but temporary.  Unlike Chambers v. Comm'r of Soc. Sec., 2020 WL 5628052, at *12 (S.D.N.Y. Sept. 21, 2020), and Figueroa v. Saul, 2019 WL 4740619, at *25-26 (S.D.N.Y. Sept. 27, 2019), relied upon by Starr, see Pl. Mem. at 7, the record here does not indicate a deterioration in Starr's condition so substantial as to render the records on which the ALJ relied incomplete or insufficient.  To the contrary, this case is more similar to another case cited by Starr, Camille v. Colvin, 104 F. Supp. 3d 329 (W.D.N.Y. 2015), aff'd 652 F. App'x 25 (2d Cir. 2016), in which the claimant's limitations in the months and years following the consultant's opinion were "substantially similar" to the "limitations and findings" articulated in the consultant's opinion.  Id. at 344.

Starr maintains that "[w]here pain or other subjective symptoms are alleged, a[n ALJ's] determination must contain a thorough discussion and analysis of the objective medical and other evidence." Pl. Mem. at 21.  But the ALJ did thoroughly discuss the medical evidence, and she had no obligation "to mention or discuss every single piece of evidence in the record." Tilles v. Comm'r of Soc. Sec., 2015 WL 1454919, at *4 (S.D.N.Y. Mar. 31, 2015) (punctuation omitted). Starr also contends that the ALJ was required to include in her opinion "a resolution of any inconsistencies in the evidence and set forth a logical explanation of plaintiff's ability to work." Pl. Mem. at 21.  But Starr does not identify any unaddressed inconsistencies — he just disagrees with the ALJ's resolution of the inconsistencies she did address.  See id.

Starr primarily focuses on the ALJ's treatment of Dr. Schulman's opinion. See Pl. Mem. at 17-18. Dr. Schulman first examined Starr in March 2017, when he found Starr could not engage in "prolonged" standing and walking. See R. 935, 938. In July 2017, Dr. Schulman examined Starr again and limited him to sedentary exertion with his leg and foot elevated. See R. 960, 962. Dr. Schulman evaluated Starr again in February 2018. See R. 512. In this opinion, Dr. Schulman stated both that Starr cannot stand or walk and that Starr must not stand or walk for "prolonged" periods of time. See R. 515. Dr. Schulman's clinical findings in February 2018 did not substantially differ from his prior findings. See R. 513, 937, 961.

Starr argues that the ALJ erred by accepting Dr. Schulman's finding that Starr could do sedentary work while rejecting Dr. Schulman's opinion that Starr cannot walk or stand. See Pl. Mem. at 17-18. But the ALJ rejected the more drastic opinion because it was contradicted by other evidence in the record, including Dr. Schulman's own clinical findings. See R. 24. Dr. Schulman's opinion that Starr could stand and walk as long as he does not do so for prolonged periods, however, was consistent with Dr. Schulman's observations that although Starr had some swelling in his right foot and leg, he was able to walk with a cane. See R. 513, 937, 961. Thus, substantial evidence supported the ALJ's acceptance of this portion of Dr. Schulman's opinion.

Starr insists that the ALJ's reliance on Dr. Kumar's opinion should be questioned because Dr. Kumar evaluated Starr prior to the development of the second ulcer, and thus he did not "have the benefit of reading hundreds of pages of after-acquired medical evidence as to how [Starr's] condition may have deteriorated over time." Pl. Mem. at 18-19. Dr. Kumar's opinion stated that Starr "had a moderate limitation for walking, kneeling, bending[,] and squatting." R. 24. The ALJ found "this opinion generally persuasive, although non-specific." Id. Again, the ALJ could conclude that Starr's second ulcer and the complications arising therefrom constituted

temporary conditions from which Starr would likely recover within twelve months, based on Starr's medical history. See R. 25, 61. Thus, Dr. Kumar's opinion as to Starr's limitations prior to the second ulcer was persuasive evidence as to what Starr's limitations would be following the completion of treatment, and the ALJ did not err in considering it.

In his reply, Starr argues that none of his "treating sources" stated that Starr could "stand and walk for two hours out of an eight hour workday, on a daily basis, without the use of a number of physical supports." Pl. Reply at 6. As noted above, the SSA regulations no longer distinguish between "treating sources" and non-treating sources. See Dorta, 2020 WL 6269833, at *3 n.8. In any event, there is no requirement that any medical source explicitly state the exact amount of time during which a claimant is capable of standing or walking per day. In this case, the ALJ could reasonably infer Starr's limitations based on an extensive array of medical records. See R. 22-25. As the fact-finder, the ALJ is authorized to draw such an inference, and we must uphold it if it is supported by substantial evidence — even if reasonable minds could reach a different conclusion. See Johnson, 563 F. Supp. 2d at 454. As just explained, the ALJ's determination that Starr could walk or stand for up to two hours per day, provided that he used a cane and elevated his foot as needed, was supported by substantial evidence. And as to the use of "physical supports," Starr provides no basis for the implication in Starr's reply brief that the ability to walk and stand without them is a prerequisite to a finding that a claimant has the RFC to engage in sedentary work. See Pl. Reply at 6.

Starr argues that the ALJ improperly denied Starr's claim based on Starr's failure to comply with his podiatrist's orders. See Pl. Mem. at 25. But the ALJ's opinion reveals that she noted Starr's non-compliance to provide factual context as to the progression of Starr's condition over time. See R. 23. The relevant paragraph in the ALJ's opinion contains only descriptive

factual statements — it includes no analysis whatsoever, credibility-related or otherwise. See id. This factual description thus provides background to support the ALJ's subsequent analysis of the various medical opinions, see R. 24-25, but does not form the foundation of any finding regarding Starr's limitations.

In any event, the issue of whether Starr could actually stand or walk for any period of time is of no moment because the ALJ's decision would have to be upheld anyway for the simple reason that there was uncontroverted evidence in the record from the VE's testimony that an individual who could not stand or walk at all would be employable both as a semiconductor bonder and a food and beverage clerk. See R. 78-79. Therefore, even if Starr could not stand or walk at all, those limitations would not compel a finding of disability.

We do find one area of the ALJ's decision to be insufficiently supported. Specifically, the ALJ's finding that Starr could work with his leg elevated only at the level of a "footstool." R. 22, 25. The ALJ explicitly recognized that Starr's RFC required elevation of his leg but never explained why that elevation was to be only at the level of a "footstool." R. 22, 25. Certainly, the ALJ was clear that she rejected the opinion of Dr. Quinones that specifically stated that the elevation had to be "chest high." R. 25, 1215. But at the same time, the ALJ accepted Dr. Schulman's view that some elevation was required. See id. (citing R. 962). Dr. Schulman's opinion, however, gives no indication whatsoever as to the required height of the elevation.[3]

---

[3] The record is also muddied by the fact that, in July 2017, Dr. Schulman required that Starr's "good" foot be elevated, R. 962, whereas the other evidence in the record, including a previous opinion from Dr. Schulman, seemingly referred to Starr's need to elevate his afflicted — that is, right — foot. See R. 69 (Starr's testimony regarding need to elevate his injured leg); R. 938 (Dr. Schulman's March 2017 opinion that Starr needed to keep foot elevated to "decrease[] pressure on right foot").

We agree with the Commissioner that the ALJ may have had reasons to reject Dr. Quinones's opinion that the elevation was required to be waist high. See Def. Mem. at 26 n.3. But the ALJ never explained the basis for finding that Starr's foot should be raised only to the level of a footstool. And the basis for fixing the required elevation height at the footstool level is not otherwise obvious from the record. We thus cannot find that the RFC — which contains the specific limitation that Starr's foot be raised only to the level of a "footstool" — is supported by substantial evidence.

Accordingly, the case must be remanded to allow the ALJ to either explain the basis for the elevation-to-footstool-level limitation in a way that is supported by the evidence or to otherwise adjust the RFC to conform to the substantial evidence in this case. It may be that further development of the record on the issue of elevation would assist the ALJ in this endeavor.

IV. CONCLUSION

For the foregoing reasons, Starr's motion to remand (Docket # 20) is granted, and the Commissioner's cross-motion for judgment on the pleadings (Docket # 28) is denied. The case is remanded for further proceedings consistent with this Opinion. The Clerk is requested to enter judgment.

SO ORDERED.

Dated: January 26, 2022
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge